# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| _____ ) | |
| MOSHIK NADAV, ) | |
| MOSHIK NADAV TYPOGRAPHY LLC, ) | Civil Action No. 17 CIV. 6465 (AKH) |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| BEARDWOOD & CO. LLC ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

# TABLE OF CONTENTS

**Section**                                                                                      **Page**

TABLE OF AUTHORITIES ........................................................................................ ii

I.  INTRODUCTION ..............................................................................................1

II.  STATEMENT OF THE FACTS ........................................................................4

    1.  Artistic Creativity in Font Software & Vector File Design ....................5

    2.  Comparison of the "jo" Ligature in *Paris Pro FS* and *Joy Logo* ............6

    3.  U.S. Copyright Registration No. TX 8-312-302 was Expedited in Lieu
       of Pending Litigation ...........................................................................8

IV.  ARGUMENT ....................................................................................................9

    1.  Beardwood Exceeded the Scope of its Non-Commercial License .......10

    2.  The Complaint provides Sufficient Evidence to Prove that Beardwood
       Copied the "jo" Ligature from the *Paris Pro FS* to create the *Joy Logo* ..............13

    3.  Beardwood's Infringement is Not *De Minimis Use* .............................18

    4.  The EULA Explicitly Prohibits Commercial Use of the *Paris Pro FS* ................20

    5.  Beardwood's Failure to Demonstrate How It Created the *Joy Logo*
       Cannot be Used to Challenge Nadav's Evidentiary Pleadings .............21

IV.  CONCLUSION ................................................................................................23

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                          <u>Page #</u>

*Adobe Systems v. Southern Software*,
 1998 WL 104303 (N.D. Cal. 1998) ...........................................................2, 13, 14

*Airframe Sys. Inc. v. L-3 Commc'ns Corp.*,
 2006 WL 2588016 (S.D.N.Y 2006)...................................................................15

*Arista Records LLC v. Lime Group LLC*,
 532 F.Supp.2d 556 (S.D.N.Y.2007) ...................................................................10

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007)............................................................................................10

*BroadVision, Inc. v. Med. Protective Co.*,
 2010 WL 5158129 (S.D.N.Y. 2010)...................................................................10

*City of New York v. Geodata Plus, LLC*,
 537 F. Supp. 2d 443 (2007) ...............................................................................13

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*,
 307 F.3d 197 (3d Cir. 2002)...............................................................................19

*Fioranelli v. CBS Broad. Inc.*,
 232 F. Supp. 3d 531, 537 (S.D.N.Y. 2017) ........................................................10

*Goldman v. Belden*,
 754 F.2d 1059 (2d Cir. 1985)..............................................................................10

*Graham v. James*,
 144 F.3d 229 (2d Cir. 1998)...............................................................................11

*Jacobsen v. Katzer*,
 535 F.3d 1373 (Fed. Cir. 2008)...........................................................................11

*Jorgensen v. Epic/Sony Records*,
 351 F.3d 46 (2d Cir. 2003)..................................................................................21

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*,
 808 F. Supp. 2d 542 (S.D.N.Y. 2011) ..................................................................9

*Jovani Fashion, Ltd. v. Fiesta Fashions*,
 500 F. App'x 42 (2d Cir. 2012)............................................................................9

*Marvullo v. Gruner & Jahr*,
 105 F. Supp.2d 225 (S.D.N.Y. 2000) .................................................................11

*Marshall v. New Kids On The Block P'ship*,
    780 F. Supp. 1005 (S.D.N.Y. 1991) ..................................................................11

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007) ...........................................................................10

*Mktg. Tech. Sols., Inc. v. Medizine LLC*,
    2010 WL 2034404 (S.D.N.Y. 2010) ..................................................................19

*Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*,
    166 F.3d 65 (2d Cir. 1999) ........................................................................18, 19

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,
    86 N.Y.2d 685 (1995) ....................................................................................12

*O.P. Sols. Inc. v. Intellectual Prop. Network Ltd.*,
    1999 WL 1122475 (S.D.N.Y. 1999) ..................................................................19

*PaySys Int'l, Inc. v. Atos Se, Worldline SA, Atos IT Servs. Ltd.*,
    226 F. Supp. 3d 206 (S.D.N.Y. 2016) ..........................................................10, 11

*Reis, Inc. v. Spring11 LLC*,
    2016 WL 5390896 (S.D.N.Y 2016) ...................................................................12

*S & H Computer Sys., Inc. v. SAS Inst., Inc.*,
    568 F.Supp. 416 (M.D. Tenn. 1983) .................................................................15

*Scholz Design, Inc. v. Sard Custom Homes, LLC*,
    691 F.3d 182 (2d Cir. 2012) ...........................................................................21

*Sega Enters, v. Accolade, Inc.*,
    977 F.2d 1510 (9th Cir.1992) .........................................................................13

*Sheldon v. Metro–Goldwyn Pictures Corp.*,
    81 F.2d 49 (2d Cir. 1936) ..............................................................................19

*Tasini v. N.Y. Times Co.*,
    206 F.3d 161 (2d Cir. 2000) aff'd, 533 U.S. 483 (2001) ......................................10

*Vault Corp. v. Quaid Software Ltd.*,
    847 F.2d 255 (5th Cir. 1988) ..........................................................................15

*Wager v. Littell*,
    549 F. App'x 32 (2d Cir. 2014) .......................................................................22

## **Other Authorities**

Federal Rule of Civil Procedure 8 ................................................................................4, 19

Federal Rule of Civil Procedure 12(b)(6) ................................................................1, 4, 9

Plaintiffs, Moshik Nadav Typography LLC and Moshik Nadav ("Nadav") respectfully submit this Memorandum of Law in Opposition to Defendant Beardwood & Co. LLC's ("Beardwood") Motion to Dismiss the Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6).

## I.    INTRODUCTION

This case arises from Defendant Beardwood's purchase of a non-exclusive, non-commercial license to Plaintiff Nadav's Paris Pro Font Software ("*Paris Pro FS*").  After purchasing the *Paris Pro FS*, Beardwood created a logo ("*Joy Logo*") for Joy Mangano, a famous entrepreneur.[1]  Beardwood's use of the *Paris Pro FS* to create the *Joy Logo* was unauthorized _commercial use_ which exceeded the scope of the _non-commercial_ license it purchased from Nadav.  Beardwood also violated several conditions of the End User License Agreement ("EULA") it accepted upon purchase of the *Paris Pro FS* and, thus, is liable for both copyright infringement and breach of contract as set forth in the Complaint (Dkt. #1).

Beardwood has moved to dismiss the Complaint by asserting various legal arguments to shield itself from the one clear cut fact of this case – that it copied the *Paris Pro FS* and used it to create the *Joy Logo*. Beardwood sets forth four arguments in support of its motion to dismiss in its memorandum of law (Dkt. #12).  All four arguments must be rejected in their entirety.

*First*, Beardwood argues that the _non-commercial_ license it purchased precludes Nadav's copyright claim, since it did not violate a condition in the license agreement.  A licensor, however, may recover against a licensee for copyright infringement where the licensee's alleged infringement is *outside the scope* of the license.  In this case, Beardwood created the *Joy Logo* for

---

[1] Joy Mangano hired Beardwood to create a marketing and branding campaign to sell her commercial products.  Ms. Mangano has sold thousands of commercial products using the *Joy Logo*.

a large marketing and branding campaign for Joy Mangano. Beardwood, thus, operated *well outside* the scope of the non-commercial license it received, as it created a logo used commercially in violation of Section 7 of the EULA, [2] which specifically sets forth what a Font User is not allowed to do with the font software (Dkt. #1-6).

*Second*, Beardwood argues that Nadav fails to plead that Beardwood copied Nadav's "source code", which it defines as the code that "generates [the] letters" (Dkt. #12, Page 12). Requiring an explicit copying of "source code" is not necessary for copyright infringement as set forth in *Adobe Systems v. Southern Software*, 1998 WL 104303 (N.D. Cal. 1998) (finding that "copying the selection of points in a glyph is copying of literal expression, that is, in essence, copying of the computer code itself.").

Here, it is undisputed that Beardwood downloaded the *Paris Pro FS* onto at least one of its computers, thus copying the glyphs of the *Paris Pro FS* and "the computer code itself."  The *Paris Pro FS* includes a software file, also known as a vector file, which includes glyphs that are able to be downloaded, copied, and manipulated once the glyphs are on a Font User's computer. By downloading Nadav's *Paris Pro FS* and modifying it, Beardwood copied the literal expression of the *Paris Pro FS* and the "software code behind it."

*Third*, Beardwood argues its copying of Nadav's work constitutes *de minimis use*.  While Beardwood is correct that the *Joy Logo* does not contain each and every one of Nadav's glyphs for each typeface style he created, this is not the relevant issue.  What is relevant is that Beardwood copied a specific ligature in the *Paris Pro FS* created by Nadav – the "jo" ligature – and used the "jo" ligature to create the *Joy Logo*. The *Joy Logo* includes only three letters "j",

---

[2] Section 7 of the EULA specifically prohibits a Font User from creating a logo for a commercial product.

2

"o" and "y", and Beardwood copied the letter "y" and the "o" glyph and the connection to "j" glyph from Nadav in the "jo" ligature, which is the centerpiece of the *Joy Logo*. Beardwood recognized that the "jo" ligature is significant, as it stated that the "flourished ligature between the J and O is a nod to the hand of the inventor and Joy's creative inspiration" and posted this information on its website as one of its case studies.[3]



Thus, since Beardwood *itself* understood that the "jo" ligature involves artistic creativity and has significant commercial value, copying of the creative "jo" ligature does not and cannot constitute *de minimis use* as alleged by Beardwood.

---

[3] This case study has been removed since Beardwood was put on notice of the dispute by Nadav.

*Fourth*, Beardwood argues that Nadav's license limits the use of the underlying *software* only (i.e. the "source code"). However, this is incorrect. The EULA sets forth what a Font User is not allowed to do with respect to the ***font software and its vector file*** in Section 7 of the EULA. Beardwood used the font software and its vector file in a way that was not allowed under the EULA, and thus, breached the EULA.

During Nadav's pre-litigation efforts to settle this dispute with Beardwood, Nadav repeatedly asked Beardwood to provide evidence to show how it created the *Joy Logo*. Beardwood refused to provide this evidence and is now using Nadav's incomplete understanding of Beardwood's process used to create the *Joy Logo* to challenge Nadav's evidentiary support in his pleadings. This is improper and this Court should provide Nadav the opportunity to collect evidence during discovery. This discovery will prove that Beardwood copied the "jo" ligature and the letter 'y' from the *Paris Pro FS*, and used these copied elements to create the *Joy Logo*, thus, demonstrating the importance of Nadav's artistic creativity to the aesthetic and commercial success of the *Joy Logo*.

For the reasons set forth above, this Court should deny Beardwood's Motion to Dismiss the Complaint under Fed. R. Civ. Pro. 12(b)(6), as Nadav has provided a well pleaded claim for both copyright infringement and breach of contract under the liberal pleading standards of Fed. R. Civ. Pro. 8.

## II.     STATEMENT OF THE FACTS.

Nadav's Complaint sets forth in specific detail the factual allegations relied upon for this Complaint. The facts set forth below supplement and clarify the facts set forth in the Complaint (Dkt. #1).

1.  **Artistic Creativity in Font Software & Vector File Design**

In Beardwood's memorandum of law, Beardwood states that "Nadav's infringement claim fails because he does not and cannot allege that the copyrightable subject matter – the Software, *not* the Typeface – has been copied" (Dkt. #12, Page 12).  Beardwood also alleges that Nadav makes "no specific claim of copied source code instructions (Dkt. #12, Page 21) and that the words "source code" never appear in the Complaint (Dkt. #12, Page 21).  However, Beardwood confuses "source code," in a traditional sense, with font software, and does not explain that font software is used to create the "source code," not the other way around, as alleged by Beardwood.

Font software is a computer software with a source code "behind it." A font software file or vector file is a file used to store multiple glyphs.  Each glyph can store a vector object.  A vector object can be, letters, numbers, ligatures, punctuation or any other artistic element. The vector objects are created by various points connected to one another through various connections, which can be manipulated to change the vector objects in the glyphs.



Individual glyphs, letters and ligatures are created by using various parametric curves to connect the vector points to one another.  Nadav created the *Paris Pro FS* by using Bézier curves to build the entire glyph set which includes letters and ligatures, and upon creation of these elements, saved the elements in a vector file as Font Software.  It took years of professional

studies to have the knowledge to create this Font software, and it took months of hard painstaking work to create the *Paris Pro FS* using the vector elements.  The *Paris Pro FS* vector file includes a great deal of creative ingenuity in its glyphs, letters and ligatures.  The *Paris Pro FS* vector file was obtained by Beardwood when it purchased a non-exclusive license to the *Paris Pro FS*.

Vector files are "open files" that are editable by users of the file.  Vector files can remain editable so a Font User is able to open the vector elements in a graphics software program, such as Adobe Illustrator, and a user can edit any text or other elements within the graphic using the graphics software program.  With such a program that supports vector files, a Font User, such as Beardwood, can manipulate, unlink or modify the connections between the vector points to modify the glyphs, letters and connections.  It is possible to change its shape, to distort the form, to add thickness, and move, add, or delete any point on the curves without any limitation by using a graphics software program.  This is what Beardwood did to the "jo" ligature after copying it from the *Paris Pro FS* vector file in clear violation of the EULA.

**2.  Comparison of the "jo" ligature in *Paris Pro FS* and *Joy Logo***

*Paris Pro FS* is a font software created by Nadav using the above described vector elements.  In particular, Nadav used Bézier curves, mathematical parametric curves used in computer graphics, to create the *Paris Pro FS* and in particular the "jo" ligature and the "o" glyph, which are unique visual elements.

The "jo" ligature connects a lowercase "j" glyph to a lowercase "o" glyph.  The *Paris Pro FS* does not include a connection between the uppercase "J" and "O" glyphs, but rather only has a connection between the lowercase "j" glyph to a lowercase "o" glyph. This is why

6

Beardwood created the *Joy Logo* with a lowercase "j" at the beginning of the word, as the only ligature available in the *Paris Pro FS* involved connecting the lowercase "j" glyph to the lowercase "o" glyph (i.e., the "jo" ligature).



As shown above on the left, the "o" glyph in the *Paris Pro FS* "jo" ligature has various curves and points mapped to one another to create the base of the "o" and the flourish on top of the "o."  There is a left portion of the base of the "o", a narrow connector, a thicker right portion of the base of the "o" that extends upwards, and a thinner flourish that extends from the right portion of the base of the "o" up, around and through the right portion of the base of the "o" and above the base of the "o" ending in a thicker end flourish.

As shown above on the right, the "o" glyph in the *Joy Logo* is virtually identical or substantially the same as the "o" glyph in the *Paris Pro FS*.  The points are in exactly the same positions including the base which has a left portion of the "o", a narrow connector, a thicker right portion of the base of the "o" that extends upwards, and a thinner flourish that extends from the right portion of the base of the "o" up, around and through the right portion of the base of the "o" and above the base of the "o" ending in a thicker end flourish.

Despite some minor differences in the "o" glyphs, it *would have been impossible* to

create the "o" glyph in the *Joy Logo* and position the points in the same position, without starting from the original "o" glyph in the *Paris Pro FS* and manipulating it via *Adobe Illustrator* or a similar program.

The "o" glyph in the *Joy Logo* includes more vector points than in the "o" glyph in *Paris Pro FS*. This was done by thickening the shape of the letters using the "Offset path" feature in the Adobe Illustrator software. While using this option, the Adobe Illustrator software adds or reduces, based on the user input, the thickness of the selected element.  Beardwood added width to the logo which automatically inserts thickness to the entire shape and adds more points to the shape of the glyph.



As shown above, the "o" glyph in the *Paris Pro FS* is reproduced after applying the "Offset path" action to this glyph and compared against the "o" glyph in the *Joy Logo*. This makes the "o" glyphs in the *Paris Pro FS* and the *Joy Logo* substantially similar, if not virtually identical.

**3. U.S. Copyright Registration No. TX 8-312-302 was Expedited in Lieu of Pending Litigation**

Nadav's *Paris Pro FS* is protected via U.S. Copyright Registration No. TX 8-312-302

8

and is entitled Paris Pro Regular.  The effective date of the Registration of this copyright is March 17, 2017.  This application was filed as an expedited application with special handling in lieu of litigation and an $800 special handling fee was paid to the US copyright office as part of the expedited request to obtain this copyright registration.

Nadav previously filed a copyright registration covering his *Paris Pro FS* on November 8, 2016, as a regular application, prior to contacting Beardwood.  This pending application was assigned Serial No. 1-4145782297 and is still pending at the US Copyright Office.

U.S. Copyright Registration No. TX 8-312-302 is the expedited version of Serial No. 1-4145782297.  Since U.S. Copyright Registration No. TX 8-312-302 was filed as a secondary application it was required to be entitled "new and revised computer program", however, the subject matter covered by this application is the same as the originally filed copyright application, Serial No. 1-4145782297.

Both copyright registrations cover Nadav's *Paris Pro FS* developed in 2012 in Israel, are foreign works, and include deposit copies of the *Paris Pro FS* copied and used by Beardwood.

## III.   ARGUMENT

When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must decide whether the facts alleged in the Complaint, if true, would entitle Plaintiffs to some form of legal remedy. Unless the answer is unequivocally "no," the motion must be denied.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the allegations in the complaint are accepted as true, and all reasonable inferences must be drawn in the plaintiff's favor. *Jovani Fashion, Ltd. v. Cinderella Divine, Inc.,* 808 F. Supp. 2d 542, 545 (S.D.N.Y. 2011), *aff'd sub nom. Jovani Fashion, Ltd. v. Fiesta Fashions*, 500 F. App'x 42 (2d Cir. 2012);

9

*McCarthy v. Dun & Bradstreet Corp.,* 482 F.3d 184, 191 (2d Cir.2007); *Arista Records LLC v. Lime Group LLC,* 532 F.Supp.2d 556, 566 (S.D.N.Y.2007). The Court's function on a motion to dismiss is "not to weigh the evidence that might be presented at trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985). The Court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

As set forth below, Nadav has set forth a well pleaded claim for both copyright infringement and breach of contract. Beardwood's motion should be dismissed in its entirety.

### 1. Beardwood Exceeded the Scope of Its Non-Commercial License

As it has acknowledged, Beardwood purchased a <u>*non-exclusive*</u>, <u>*non-commercial license*</u> to Nadav's *Paris Pro FS*. Beardwood's use well exceeded the scope of the license it was granted from Nadav.

Courts have found copyright infringement in such instances.  "[T]he fact that a party has licensed certain rights to its copyright to another party does not prohibit the licensor from bringing an infringement action where it believes the license is exceeded or the agreement breached." *PaySys Int'l, Inc. v. Atos Se, Worldline SA, Atos IT Servs. Ltd.,* 226 F. Supp. 3d 206 (S.D.N.Y. 2016) (citing *Tasini v. N.Y. Times Co.*, 206 F.3d 161, 170–71 (2d Cir. 2000), aff'd, 533 U.S. 483, 121 S.Ct. 2381, 150 L.Ed.2d 500 (2001)).  "[I]f a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement.'" *Fioranelli v. CBS Broad. Inc.*, 232 F. Supp. 3d 531, 537 (S.D.N.Y. 2017) (citing *BroadVision, Inc. v. Med. Protective Co.*, No. 08 Civ. 1478(WHP), 2010 WL 5158129, at *3 (S.D.N.Y. Nov.

10

23, 2010) (quoting *Jacobsen v. Katzer*, 535 F.3d 1373, 1380 (Fed. Cir. 2008))); *see also*

*Marvullo v. Gruner & Jahr*, 105 F.Supp.2d 225, 228 (S.D.N.Y. 2000) ("[A] licensor may bring a

claim for infringement where a licensee uses copyrighted material beyond the scope of a

license.").  "The Second Circuit has recognized that a licensor may recover against a licensee for

copyright infringement where (1) **the licensee's alleged infringement is outside the scope of**

**the license**; (2) the licensee failed to satisfy a condition precedent to the license, such that the

license is invalid; **or** (3) the licensor rescinded the license after the licensee materially breached

one of its covenants." *PaySys at* 215 (S.D.N.Y. 2016) (citing *Graham v. James*, 144 F.3d 229,

235–238 (2nd Cir. 1998, emphasis added)).

    In the present case, Beardwood's creation of the *Joy Logo* and subsequent profit from

commercial use of the *Joy Logo* is well beyond the non-exclusive, non-commercial license

granted by Nadav.  Specifically, Beardwood (1) created the *Joy Logo*, an artistic work that is

based upon the "jo" ligature  found in the *Paris Pro FS*; (2) used the *Paris Pro FS* to design an

article and/or product of mass production that includes a graphical representation made by the

Font Software; (3) the *Joy Logo* created by Beardwood has been applied for registration with the

United States Patent and Trademark Office (USPTO); and (4) the *Joy Logo* is used in a company

having annual financial turnover of over $1,000,000.

    All of these uses were not allowed by the EULA and, thus, Beardwood's infringement is

***outside the scope*** of the non-exclusive license granted by Nadav.  See *Marshall v. New Kids On*

*The Block P'ship,* 780 F. Supp. 1005, 1008–09 (S.D.N.Y. 1991) (holding that "if the licensee acts

in such a way as to effectively make himself a 'stranger' to the copyright owner, then the action

arises under the copyright laws just as if the claim were against any other infringer who is a

stranger to the plaintiff").

In its rebuttal to allegations of copyright infringement, Beardwood ignores the caselaw on infringement *outside the scope* of the license.  Instead, it argues that creation of the logo "breaches a *condition* to the EULA, rather than a *covenant*."  (Dkt. #12, Page 14).  Beardwood argues that the contract must contain "unmistakable" language to be a covenant and "given that the word 'condition' does not appear in the EULA, Nadav certainly cannot identify any such 'unmistakable' language." Beardwood cites *Reis, Inc. v. Spring11 LLC*, 2016 WL 5390896 (S.D.N.Y Sept. 26, 2016) for this proposition.

However, *Reis* sets forth that "specific, talismanic words are not required" to show a condition. *Id*. at *6.  Thus, the fact that the word *condition* is not present in the EULA simply does not matter.  Furthermore, *Reis* is distinguishable from the present case as it is an example where a license was loosely worded as its Terms of Service merely delineate "acceptable" and "unacceptable" behavior under the licensing agreement, such as prohibiting transferring access to Reis Database, and acting in such a manner as to deprive Reis of a loss of a potential sale or subscription (marks omitted).

In the present case, the EULA to the *Paris Pro FS* sets forth *specific conditions and terms* as to what a licensee is not allowed to do with the font software in Section 7 of the EULA. Courts have found that specific statements in a contract are *conditions* to the contract.  In *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 691, 660 N.E.2d 415, 418 (N.Y. Ct. of Appeals 1995), the Court found that the critical language used in the contract used unmistakable language of condition ("if," "unless and until"). Similarly, in Section 7 of the EULA, the words "NOT ALLOWED" were used, which specified the conditions of the contract that the licensee was not allowed to do.  Thus, Beardwood violated a *condition* of the EULA.

Since Beardwood's infringement was outside the scope of the EULA, and it violated a condition of the EULA, it must be found liable for copyright infringement.

**2.   The Complaint provides Sufficient Evidence to Prove that Beardwood Copied the "jo" ligature from the *Paris Pro FS* to create the *Joy Logo***

Beardwood next argues that Nadav fails to plead that Beardwood copied Nadav's "source code", which it defines as the code that "generates [the] letters" (Dkt. #12, Page 12).  Requiring an explicit copying of "source code" in its traditional sense, however, is not necessary for copyright infringement.   The Court in *Adobe Systems v. Southern Software*, 1998 WL 104303, *5 (N.D. Cal. 1998) (found that "copying the selection of points in a glyph is copying of literal expression, that is, in essence, copying of the computer code itself.").  Here, Beardwood did exactly that, as it copied the "jo" ligature and the selection of points in the "o" glyph from the *Paris Pro FS* and its vector file and, thus, copied the computer code itself.  *See also City of New York v. Geodata Plus, LLC*, 537 F. Supp. 2d 443 (2007) (finding copyright infringement of a vectorized map tax map from complex raster images involving curved lines and vector points).

It is undisputed that Beardwood downloaded the *Paris Pro FS* onto at least one of its computers, which includes the "jo" ligature. [4]  Beardwood then used the copied "jo" ligature and modified it in Adobe Illustrator to create the *Joy Logo*.   The below visual overlay shows the substantial similarity of the "o" glyph in the *Paris Pro FS* and the "o" glyph in the *Joy Logo*:

---

[4] The Court in *Adobe* found infringement when the software was loaded onto a computer's random-access memory.  Adobe at *6 (citing *Sega Enters, v. Accolade, Inc.*, 977 F.2d 1510 (9th Cir.1992).



Specifically, the "o" glyph in the *Paris Pro FS* and the "o" glyph in the *Joy Logo* (also

discussed *supra* in II.2) are substantially similar, if not virtually identical.  The similarity of these

glyphs is overwhelming.  It would have been <u>*impossible*</u> for Beardwood to create the *Joy Logo*

without copying from the *Paris Pro FS,* since the "o" glyph of *Joy Logo* has vector points in the

same position as the "o" glyph in the *Paris Pro FS*.  This demonstrates that Beardwood copied

"the computer code itself", and is liable for copyright infringement. *Adobe*, at *5.



Paris Pro 'o' with the
"Offset path" command

Joy logo 'o'

*Adobe* is illustrative as "[t]he code is determined directly from the selection of the points.

Thus, any copying of the points is copying of literal expression, that is, in essence, copying of

the computer code itself" *Adobe* at *5.  Moreover, trivial modifications do not eliminate

14

copyright infringement. See *S & H Computer Sys., Inc. v. SAS Inst., Inc.*, 568 F.Supp. 416, 423 (M.D.Tenn.1983).

The cases cited by Beardwood are distinguishable.  In *Airframe Sys. Inc. v. L-3 Commc'ns Corp.*, 2006 WL 2588016 (S.D.N.Y 2006), the Court found that "the complaint does not "allege that defendant misappropriated the source code for its own illegitimate use."  This is in contrast to the present case whereby Beardwood misappropriated Nadav's *Paris Pro FS* and used the font software to create the *Joy Logo*, which it passed off as its own to Joy Mangano. Furthermore, in *Vault Corp. v. Quaid Software Ltd.*, 847 F.2d 255 (5th Cir. 1988), the Court opined on copyright infringement of a computer software program downloaded and used as an essential step in the utlitization of a computer program under Section 117(1) of the Copyright Act [5].  Infringement under Section 117(1) of the Copyright Act is not relevant to this case at bar.

Beardwood next argues that there are *typeface* differences between the *Joy Logo* and the *Paris Pro FS* and cites Exhibit 1 to its January 4, 2017 letter.  This letter shows various typeface comparisons below:

---

[5] Section 117(a) sets forth that it is not an infringement for the owner of a copy of a computer program to make or authorize the making of another copy or adaptation of that computer program provided: (1) that such a new copy or adaptation is created as an essential step in the utilization of the computer program in conjunction with a machine and that it is used in no other manner, or (2) that such new copy or adaptation is for archival purposes only and that all archival copies are destroyed in the event that continued possession of the computer program should cease to be rightful.



However, each of the comparisons referenced by Beardwood fail to consider the "o" glyph and its flourish shown above in red.  Simply put, the "o" glyph in red is not present in any of the fonts set forth by Beardwood.  Thus, all of the examples of different fonts provided by Beardwood are irrelevant as none of them have the flourish of the "jo" ligature set forth in the *Paris Pro FS.*

Moreover, Beardwood's argument that ligatures are common elements of many typefaces fails to reference the "jo" ligature.  The examples of having flourished extenders shown below are not similar to and do not have the structure of the "o" glyph and "jo" ligature" created by Nadav.



Moreover, Beardwood itself recognized the importance of the connection between the "j" and "o" in the "jo" ligature as it noted that:



As set forth *supra*, the *Paris Pro FS* only includes a ligature between the lowercase "j" glyph to a lowercase "o".  It is no coincidence that Beardwood copied the lowercase "jo" ligature to create the *Joy Logo*, as it chose to copy the only ligature that was available in the *Paris Pro FS* and used this ligature to create the *Joy Logo*.

In its memorandum of law, Beardwood also argues that the word "MANGANO" in the Joy Logo uses a "typeface nothing like Paris Pro" (Dkt. 12, Page 5.  However, Beardwood fails to note that it created the *Joy Logo* both with and without the word MANGANO as shown below:



Significant use of the *Joy Logo* is made <u>without reference</u> to the word MANGANO as shown on the shopping TV channel HSN, major retail stores across the states, as well as on Joy Mangano's website and on various commercial products sold on www.joymangano.com (See Exhibit 1 to Declaration of Roy D. Gross).

In sum, there is substantial evidence to prove that Beardwood copied the "jo" ligature and that the "o" glyph in the *Paris Pro FS* and the "o" glyph in the *Joy Logo* are substantially similar. This evidence is sufficient to make out a claim for copyright infringement.


**3.     Beardwood's Infringement is Not *De Minimis Use***

Beardwood next argues that its copying of Nadav's work constitutes *de minimis use*. Beardwood argues the Court should compare the source code of the ligature and letters in the Joy Logo to the **_entire_** copyrighted Paris Pro Software "as a whole" (Dkt. #12, Page 18) to determine whether it made *de minimis use* of the *Paris Pro FS*.  Beardwood argues that since it did not use **all of** the 1300 glyphs in the *Paris Pro FS* to create the *Joy Logo*, its use must be considered *de minimis*.  This argument is not supported by the caselaw.

In *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc*., 166 F.3d 65, 71–72 (2d Cir. 1999), Defendants argued that because they only infringed a total of 20 articles out of the 90,000 that Nikkei publishes, the use was *de minimis*.  However, the Court found that the Plaintiff is entitled to the separate legal protection of each of its articles, and Defendants' failure to copy a

18

larger percentage of Nikkei's total works does not insulate Defendants from liability.  The Court

in Nihon also rejected Defendants' argument that any infringement was *de minimis* because 20

abstracts represent only a tiny fraction of the 17,000 abstracts they published in 1997.  *Nihon*, at

71.  *"*As Learned Hand declared long ago, 'no plagiarist can excuse the wrong by showing how

much of his work he did not pirate.'" *Id.*, citing *Sheldon v. Metro–Goldwyn Pictures Corp.,* 81

F.2d 49, 56 (2d Cir. 1936).

Furthermore, in *Mktg. Tech. Sols., Inc. v. Medizine LLC*, No. 09 CIV. 8122 (LMM), 2010

WL 2034404, at *3 (S.D.N.Y. May 18, 2010), the Court found that copyright infringement of

software code having 437 lines of code out of 953,612 lines of code was not de minimis use,

since the code performs a real function in the program.

The *Joy Logo* includes only three letters "j", "o" and "y", and Beardwood copied at least

the "o" and the connection to "j" from Nadav ("jo" ligature), which is the centerpiece of the *Joy*

*Logo*.[6] Copying at least one glyph out of three including the ligature cannot be *de minimis use*,

especially since Beardwood recognized the importance of the ligature and stated that the "jo"

ligature is "a nod to the hand of the inventor and Joy's creative inspiration."

Since Beardwood itself understood that the "jo" ligature is significant, copying of the

"jo" ligature does not and cannot constitute *de minimis use*. "A de minimis defense does not

apply where the *qualitative* value of the copying is material." *Dun & Bradstreet Software Servs.,*

*Inc. v. Grace Consulting, Inc.,* 307 F.3d 197, 208 (3d Cir.2002). *See also O.P. Sols. Inc. v.*

*Intellectual Prop. Network Ltd.*, 1999 WL 1122475, at *11 (S.D.N.Y. Oct. 21, 1999) (finding

that copying of unique action grid feature that distinguishes it from its competitors was not *de*

*minimis*).

---

[6] Beardwood also copied the "y" glyph from the *Paris Pro FS*.

19

**4.      The EULA Explicitly Prohibits Commercial Use of the *Paris Pro FS***

Beardwood argues that the Complaint does not adequately allege that Beardwood has breached any provision of the EULA.  This is incorrect.  Nadav pleaded in the Complaint under the liberal pleading standards of Fed. R. Civ. Pro. 8 that Beardwood copied the "jo" ligature from the *Paris Pro FS* and used the "jo" ligature to create the *Joy Logo*, which Beardwood was expressly not allowed to do under the EULA.  See (Dkt. #1, ¶¶ 29, 30, 33, 35-62 and 79-86).

Beardwood argues that the EULA contains "no prohibitions of any kind on use of the Typeface" and states that Nadav's license only limits the use of the underlying *software* only (i.e. the "source code").  This is also incorrect.

Section 7 of the EULA specifically lists what a Font User is not allowed to do with respect to the *Paris Pro FS* and its vector file. Beardwood copied the *Pro FS* and its vector file and used it in a way that was not allowed under the EULA, as a Font User is not allowed to:

> Design a new Font and/or Font Software **and/or any other artistic work** which is based upon the Font Software or its graphical representation and/or embodiments;

> Design a new Font or **any other artistic work** which will infringe or violate the Font Software or any of its graphical representations and/or embodiments under the laws of Israel or under the laws of any other nation in the world;

> Use the Font Software and/or any of its graphical representations and/or embodiments to **design an article and/or product of mass production and/or a package for a commercial product** and/or a piece of garment and/or any other wearable article which will include and/or embody a graphical representation of the Font Software or any other graphical representation made by the Font Software;

> Use the Font Software and/or any of its graphical representations and/or embodiments to **design a logo** (i.e., a logotype/graphical representing symbol) **and/or a commercial product or part of a product and/or any artistic work to any legal entity which has a logo registered as a trademark in the U.S.** and/or has a logo registered as a trademark in more than two countries other than the U.S. and/or is listed as a public company in one or more of the stock exchange markets around the world and/or has an annual financial turnover of over $ 1,000,000 USD;

(emphasis added).

Nadav pleaded these allegations in at least ¶¶ 33, 44 and 83 of the Complaint which

recite:

> The EULA specifies that the license granted to customers is a license to use the Paris Pro
> FS – i.e., the coded software file that generates the Paris Pro Typeface font designs. The
> EULA specifies that customers are not allowed to design a new font or artistic work
> based upon the Paris Pro FS or its graphical representations. Moreover, the EULA
> specifies that the Paris Pro FS is not to be used in a commercial manner, i.e. for an article
> of mass production or a commercial product. Furthermore, the EULA specifies that if the
> customer would like to use the Paris Pro FS in a way limited by the EULA, the customer
> should contact MNT to get a written approval for that specific use. (¶ 33)

> Upon information and belief, Beardwood's unauthorized commercial use of the Paris Pro
> FS violates the Paris Pro EULA, which limits Beardwood's use of the Paris Pro FS to
> only non-commercial use. (¶ 44)

> By reason thereof, Beardwood's actions are breach of the Paris Pro EULA agreement
> entered to upon purchasing a license to the Paris Pro FS. (¶ 83)

Accordingly, since Nadav properly plead a claim for breach of contract with specificity,

Beardwood's argument that no proper breach of contract claim was pled must fail.

### 5.   Beardwood's Failure to Demonstrate How it Created the *Joy Logo* Cannot be Used to Challenge Nadav's Evidentiary Pleadings

To plead copyright infringement, a plaintiff must allege (1) ownership of a valid

copyright and (2) unauthorized copying of the copyrighted work. *See Scholz Design, Inc. v. Sard*

*Custom Homes, LLC,* 691 F.3d 182, 186 (2d Cir.2012). To allege that a work was copied, a

plaintiff must allege "both that his work was actually copied and that the portion copied amounts

to an improper or unlawful appropriation." *Jorgensen v. Epic/Sony Records,* 351 F.3d 46, 51 (2d

Cir.2003) (internal quotation marks omitted). "Where direct evidence is unavailable, copying

may be pleaded by reference to circumstances showing that the works are substantially similar

and that defendants had a reasonable opportunity to view the copyrighted work." *Wager v. Littell*, 549 F. App'x 32, 33 (2d Cir. 2014) (citing *Jorgensen.* at 51, 54–55 (internal quotation marks omitted).

During Nadav's pre-litigation settlement efforts, Nadav repeatedly asked Beardwood to provide evidence to show how it created the *Joy Logo*.  However, Beardwood refused to provide this evidence for strategic reasons as it would make it easier for Nadav to "write the complaint" (Dkt. #1-7, Page 23).

Beardwood is hiding behind its refusal to show how it created the *Joy Logo* and argues that "Nadav does not state a valid claim for infringement of Software, which would require a showing of copying, manipulation, or modification of the source code of the software itself" (Dkt. #12, Page 19). Beardwood is thus using its refusal to provide evidence as a shield to deny culpability for copyright infringement and breach of contract, and also as a sword to attack Nadav's evidentiary support in his pleadings.

Such behavior is precisely why discovery is needed in this case.  Nadav has demonstrated the substantial similarity between the "o" glyph in the *Paris Pro FS* and the "o" glyph in the *Joy Logo*, as well as the copying of the *Paris Pro FS*.  This Court should provide Nadav the opportunity to collect evidence during discovery to prove his case against Beardwood. Specifically, this Court should provide Nadav with the sketches Beardwood created in the design process to create the *Joy Logo*.  These sketches, and the various iterations thereof, will demonstrate the various design choices made by Beardwood, and will show previous versions of the *Joy Logo* that were not commercialized, and why Beardwood chose to copy the "jo" ligature to create the *Joy Logo*.

As stated by Beardwood in its web article dated August 14, 2015 (Exhibit 2 to

Declaration of Roy D. Gross), when Beardwood creates a logo for a client its:

> "creative team generally collects and edits about 100 images….Typography, graphic forms, illustrations, photography, even a structural inspiration -- we talk through each of these categories together. Roll our sleeves up. Spread all the images out on the table. Move them back and forth. Sometimes it takes a few tries for everyone to get warmed up, but soon everyone is in the flow."

Nadav should be allowed to review evidence to show how Beardwood created the *Joy*

*Logo*, including viewing its design choices – choices which will render clear the one clear cut

fact of this case – that <u>Beardwood copied the *Paris Pro FS* and used it to create the *Joy Logo*</u>.


## IV.    CONCLUSION

For the reasons stated herein, Nadav requests that Beardwood's Motion to dismiss be

denied in its entirety.

Respectfully Submitted,

Date: November 15, 2017          s/Roy D. Gross/_____
                                 Roy D. Gross (Bar No. RG0416)
                                 The Roy Gross Law Firm, LLC
                                 50 Washington Street, Suite 737
                                 Norwalk, Connecticut 06854
                                 Telephone: (203) 423-0235
                                 roy@rgrosslaw.com

                                 *Attorney for Plaintiffs Moshik Nadav and Moshik Nadav*
                                 *Typography LLC*