UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MOSHIK NADAV,<br>MOSHIK NADAV TYPOGRAPHY LLC,<br><br>Plaintiffs,<br><br>v.<br><br>BEARDWOOD & CO. LLC<br><br>Defendant. | Civil Action No. 17 CIV. 6465 (AKH) |

**PLAINTIFFS' SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

**Section**            **Page**

TABLE OF AUTHORITIES ............................................................................................. ii

I.  ARGUMENT ............................................................................................................. 1

    1.  Copying the Literal Expression of Font Software is Copyright Infringement as Established in *Adobe Systems v. Southern Software* ............................................. 1

    2.  Nadav's Technical Explanation of the *Paris Pro FS* should be Considered by This Court or Nadav should be Granted Leave to Amend the Complaint .......... 3

    3.  The Terms of Use of the EULA Sets Forth its *Conditions* ...................................... 4

    4.  Beardwood created the *Joy Logo* from the Font Software and Breached the EULA ................................................................................................ 5

III.  CONCLUSION ......................................................................................................... 7

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                                              **Page #**

*Adobe Systems v. Southern Software*,
    1998 WL 104303 (N.D. Cal. 1998) ............................................................................1, 2, 3

*City of New York v. Geodata Plus, LLC*,
    537 F. Supp. 2d 443 (2007) ...........................................................................................2

*Foman v. Davis*,
    371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) ......................................................4

*Graham v. James*,
    144 F.3d 229 (2d Cir. 1998) ..........................................................................................6

*Jorgensen v. Epic/Sony Records*,
    351 F.3d 46 (2d Cir. 2003) ............................................................................................7

*Ronzani v. Sanofi S.A.*,
    899 F.2d 195 (S.D.N.Y. 1990) ......................................................................................4

*Wager v. Littell*,
    549 F. App'x 32 (2d Cir. 2014) .....................................................................................7

**Other Authorities**

Federal Rule of Civil Procedure 8 ......................................................................................1, 3

Federal Rule of Civil Procedure 15(a) ....................................................................................3

Plaintiffs' respectfully submit their Sur-Reply to address arguments in Defendant's Reply Memorandum dated December 1, 2017.

## ARGUMENT

1. **Copying the Literal Expression of Font Software is Copyright Infringement as Established in** *Adobe Systems v. Southern Software*

In Beardwood's Reply Memorandum, Beardwood argues that Nadav does not plead that it copied the Paris Pro "software" to create the *Joy Logo*. Beardwood argues that "Nadav does not specify the lines of source code from his copyrighted Software that Beardwood allegedly copied, used, or manipulated, nor does he identify particular Software instructions or any other specific aspect of his copyrighted material that he claims were copied" (Reply. Br. at 7-8). However, identification of "lines of source code" or "particular Software instructions" is not required to prove copyright infringement as established by *Adobe Systems v. Southern Software*, 1998 WL 104303 (N.D. Cal. 1998), nor is it required to satisfy the liberal pleading standard to plead copyright infringement under Fed. R. Civ. Pro. 8.

In *Adobe*, the Court upheld the Copyright Office's 1992 Regulation that "computer programs designed for generating typeface in conjunction with low resolution and other printing devices may involve original computer instructions entitled to protection under the Copyright Act." *Adobe*, *5. Furthermore, *Adobe* established that copyright protection exists in Font Software since "font editors make creative choices as to what points to select based on the image in front of them on the computer screen. The code is determined directly from the selection of the points. Thus, <u>any copying of the points is copying of literal expression, that is, in essence, copying of the computer code itself</u>." *Id.*, emphasis added.

*Adobe* is factually very similar to the present case. Plaintiff Adobe owned a Font

1

Software program, which allows an editor to manipulate font files to provide glyph coordinates and instructions of various letters and Typeface. The assignment of coordinates in the glyphs produced instructions and resulting font files. In *Adobe*, Defendant King uploaded font software programs into his computer and used a commercially available font editing program to scale the coordinates 101% on the vertical axis in order to change the font slightly. *Adobe*, at *2.

Taking actions similar to Defendant King, Beardwood modified the original "o" glyph in the *Paris Pro FS* by manipulating the vector points in the *Paris Pro FS* vector file through the Adobe Illustrator program to create the "o" glyph in the *Joy Logo*. This blatant copying of literal expression of the Font Software was found by the Adobe Court to be copyright infringement.

Beardwood tries to distinguish *Adobe* by arguing that *Adobe* was decided on Summary Judgement and on a full factual record. However, Beardwood cannot dispute the significant similarity of *Adobe* with the case at bar. Further, Beardwood has not identified any contrary law that demonstrates that identification of "lines of source code" or "particular Software instructions" is required to prove copyright infringement of a Font Software, nor can it do so.

Other cases also support *Adobe*. In *City of New York v. Geodata Plus, LLC*, 537 F. Supp. 2d 443 (E.D.N.Y. 2007), the Court found copyright infringement of elements in a software file of a map of the city of New York. The Court relied upon the fact that there were *identical coordinates and shapes* in the infringing map to find "'striking similarities' between the two products that purportedly prove wholesale copying." *Id*., at 454.

Accordingly, Beardwood's argument that Nadav has not sufficiently plead sufficient facts to state a claim of copyright infringement must be rejected.

**2. Nadav's Technical Explanation of the *Paris Pro FS* should be Considered by This Court or Nadav should be Granted Leave to Amend the Complaint**

Beardwood argues that "Nadav is presenting unpled facts and that these facts should not be considered as they are not part of the Complaint." (Reply. Br. at 2-3). Beardwood argues that since the words "vector", "glyph" and "vector file" do not appear in the Complaint, then the Court should not consider Nadav's "new facts and theories." (Reply. Br. at 8, 14). Beardwood is again incorrect.

In paragraphs ¶¶ 30, 33 and 68 of the Complaint, Nadav pleaded the words "computer software file", "font software file" and "coded software file." A "vector file" is the technical term for a "software file", "font software file" and "coded software file" referenced in the Complaint. Moreover, Nadav's entire Complaint references the term *Paris Pro FS*, with "*FS*" standing for font software (see ¶ 3 of the Complaint). Thus, not only is this term used throughout the Complaint, it is used uniformly.

Nadav's Opposition Memorandum presents a technical explanation of how of the *Paris Pro* font software file (vector file) was created and how its vector points were copied by Beardwood and rearranged in a similar manner to that set forth in *Adobe*. This explanation was used to prove a technical explanation to supplement the comparison of Beardwood's infringement of the *Paris Pro FS* set forth in ¶¶ 43-62 of the Complaint.

Nadav submits while that such an explanation is not necessary under the liberal pleading standards of Fed. R. Civ. Pro. 8, such an explanation was provided to assist the Court in its understanding of how Beardwood copied the 'o' glyph after receiving the *Paris Pro FS* font software file (vector file). Should the Court deem this to be necessary, Nadav requests leave to amend the Complaint to introduce these additional facts in an Amended Complaint. Fed. R. Civ. P. 15(a) requires that "leave [to amend] shall be freely given when justice so requires." *See*

*Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990); *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962).

### 3. The Terms of Use of the EULA Sets Forth its *Conditions*

In its Reply Memorandum, Beardwood continues to argue that the terms of use of the EULA are *covenants*, not *conditions* (Reply. Br. at 16). Nadav disagrees. In the Recitals set forth at the beginning of the EULA, it is stated:

> This Agreement governs the **terms of use** of the Font Software and the design of the Fonts and Typeface embodied therein;
>
> By downloading and/or installing and/or using this Font Software you hereby agree to be **bound by the terms of this Agreement**. If you do not wish to enter into this Agreement, do not purchase, access, use or otherwise download, install or use the Font Software;
>
> The **terms of this agreement** will apply to any Paris Pro Typeface styles purchased by the Font User.

(emphasis added).

The Recitals of the EULA specify that the terms of this agreement are *conditions*, i.e. that the Terms of Use are the terms and conditions that a Font User agrees to upon accepting the contract. Section 7 of the EULA sets forth specific *conditions* of what a Font User is NOT ALLOWED to do with specific clarity. If a Font User wants to perform one of these conditions that are not allowed under the EULA, Section 7 contemplates this situation and states:

> If the Font User would like to use the Font Software in a way which is limited by this agreement he should contact Moshik Nadav Typography and get a written approval for that specific use.

In the present case, Beardwood disregarded the *terms and conditions* of the agreement when it (1) created the *Joy Logo*, an artistic work that is based upon the "jo" ligature found in the *Paris Pro FS*; (2) used the *Paris Pro FS* to design an article and/or product of mass production that includes a graphical representation made by the Font Software; (3) the *Joy Logo* created by

4

Beardwood has been applied for registration with the United States Patent and Trademark Office (USPTO); and (4) the *Joy Logo* is used in a company having annual financial turnover of over $1,000,000.

Since Beardwood's infringement was outside the scope of the EULA, and it violated a condition of the EULA, Nadav has properly pled Beardwood's copyright infringement.

### 4. Beardwood created the *Joy Logo* from the Font Software and Breached the EULA

Beardwood argues that "Nadav does not adequately allege that Beardwood breached any provision of the EULA" (Reply. Br. at 13). This is clearly incorrect.

The EULA sets forth in Section 7 in clear language what a Font User is not allowed to do with "the Font Software or to any of its graphical representations and/or embodiments." Section 7 of the EULA states that:

Font User, or any other legal entity that has been exposed to the ***Font Software or to any of its graphical representations and/or embodiments*** via the Font User, its employees or any other party working with the Font User, Is NOT ALLOWED TO:

    Design a new Font and/or Font Software and/or any other artistic work which is based upon the *Font Software or its graphical representation and/or embodiments*;

    Design a new Font or any other artistic work which will infringe or violate the *Font Software or any of its graphical representations and/or embodiments* under the laws of Israel or under the laws of any other nation in the world;

    Use the Font Software and/or any of its graphical representations and/or embodiments to design an article and/or product of mass production and/or a package for a commercial product and/or a piece of garment and/or any other wearable article which will include and/or embody a graphical representation of the *Font Software or any other graphical representation made by the Font Software*;

    Use the *Font Software and/or any of its graphical representations and/or embodiments* to design a logo (i.e., a logotype/graphical representing symbol) and/or a commercial product or part of a product and/or any artistic work to any legal entity which has a logo registered as a trademark in the U.S. and/or has a logo registered as a trademark in more than two countries other than the U.S. and/or is listed as a public company in one or more

>of the stock exchange markets around the world and/or has an annual financial turnover of over $ 1,000,000 USD;

(emphasis added).

The Font User (Beardwood) was clearly exposed to the font software, i.e. the *Paris Pro FS* software file (vector file), and its graphical representations which included the "jo" ligature and 'o' glyph. Beardwood received and downloaded the *Paris Pro FS* software file (vector file) from Nadav. After receiving the *Paris Pro FS* software file (vector file), Beardwood used the *Paris Pro FS* software file (vector file) to create the *Joy Logo,* and created "an article and/or product of mass production and/or a package for a commercial product", which it sold to Joy Mangano. Moreover, Beardwood designed a logo (i.e., a logotype/graphical representing symbol) and/or a commercial product or part of a product and/or any artistic work to any legal entity which has a logo registered as a trademark in the U.S. These actions are specifically not allowed under the EULA and Beardwood materially breached the EULA by performing these actions.[1] Moreover, Beardwood breached the spirit of the agreement by purchasing a license for $60 and subsequently generating thousands of dollars of profit by using the *Paris Pro FS* software file (vector file) in a commercial manner.

In its Reply Memorandum, Beardwood argues that it did not create an artistic work 'based upon' the software – i.e., the source code that generates the Typeface (Reply. Br. at 13). However, Beardwood had a copy of the Font Software in its possession, and has offered no evidence to show that it *did not* use the Paris Pro FS to create the *Joy Logo*. Nadav has

---

[1] If this Court finds that any of the provisions in the EULA are a covenant rather than a condition (which Nadav respectfully submits that this Court should not), Nadav submits that a breach of such a covenant is a material breach. A material breach allows a licensor to rescind the license and hold the licensee liable for infringement for uses of the work thereafter. *Graham v. James*, 144 F.3d 229, 237 (2d Cir. 1998).

continuously asked Beardwood to provide this evidence. "Where direct evidence is unavailable, copying may be pleaded by reference to circumstances showing that the works are substantially similar and that defendants had a reasonable opportunity to view the copyrighted work." *Wager v. Littell*, 549 F. App'x 32, 33 (2d Cir. 2014) (citing *Jorgensen v. Epic/Sony Records*. 351 F.3d 46, 51, 54-55 (2d Cir. 2003) (internal quotation marks omitted).

Beardwood also argues that the term "graphical representations and/or embodiments" is not defined in the EULA. While not explicitly defined in Section 1 of the EULA, there is only a single reasonable interpretation of this term, that is it must be defined as the glyphs in the *Paris Pro FS* software file (vector file). This is because the term "graphical representations and/or embodiments" is used together with the term "Font Software" consistently in the EULA in the following manner: "*Font Software or its graphical representation and/or embodiments*."

Since "Font Software" is defined as "coded software that generates Paris Pro typeface designs", the term "graphical representation and/or embodiments" must mean the glyphs that are the graphical representations provided in the *Paris Pro FS* software file (vector file).

Beardwood copied the 'o' glyph in the *Paris Pro FS* software file (vector file) and explicitly violated specific provisions in the EULA, which it was not allowed to do. Accordingly, Beardwood's argument that Nadav has not sufficiently plead sufficient facts to state a claim for breach of contract must be rejected.

## **CONCLUSION**

For the reasons stated herein and in Plaintiffs' Opposition Memorandum, the Court should reject Defendant's Motion to Dismiss the Complaint.

|  |  |
|---|---|
|  | Respectfully Submitted, |
| Date: December 11, 2017 | s/Roy D. Gross/ <br> The Roy Gross Law Firm, LLC <br> 50 Washington Street, Suite 737 <br> Norwalk, Connecticut 06854 <br> Telephone: (203) 423-0235 <br> Email:  roy@rgrosslaw.com |

*Attorney for Plaintiffs Moshik Nadav and Moshik Nadav Typography LLC*