```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
MOSHIK NADAV, MOSHIK NADAV                    :
TYPOGRAPHY, LLC,                              :       ORDER GRANTING MOTION
                                              :       TO DISMISS
                        Plaintiffs,           :
        -against-                             :       17 Civ. 6465 (AKH)
                                              :
BEARDWOOD & CO. LLC,                          :
                                              :
                        Defendant.            :
------------------------------------------------------------ X
```

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Moshik Nadav ("Plaintiff") and his company, Moshik Nadav Typography LLC, filed this action on August 24, 2017. Plaintiff is a graphic designer that develops and markets typeface fonts. Broadly stated, plaintiff claims that Beardwood & Co. LLC ("Beardwood") used plaintiff's font software to create a marketing logo. The complaint contains two causes of action, one for copyright infringement and another for breach of contract. On October 13, 2017, defendant moved to dismiss the complaint, arguing, among other things, that because the parties entered into a licensing agreement that covers the conduct at issue, the claim for copyright infringement has been waived. For the reasons stated herein, defendant's motion is granted. Because plaintiff's only remaining claim is for breach of contract under state law, the Court declines to exercise supplemental jurisdiction and the complaint is dismissed in its entirety.

### Background

        The following information is taken from plaintiff's complaint, which I must "accept as true" for the purpose of this motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff is a graphic designer who specializes in creating artistic typeface fonts. In 2012, plaintiff created the Paris Pro Font Software ("Paris Pro FS"), which is protected by a copyright.

*See* Complaint, ECF 1, Exh. 1. Through a website, plaintiff allows customers to purchase and download the Paris Pro FS under terms governed by an End Use License Agreement ("EULA"). As relevant here, the EULA restricts individuals from using the Paris Pro FS for certain commercial purposes. *See* Complaint, ECF 1, Exh. 3, ¶ 7. To use the Paris Pro FS in ways restricted by the EULA, users are instructed to contact plaintiff to obtain a written agreement for that specified purpose. *See id.*

This case concerns Beardwood's alleged use and manipulation of plaintiff's font software to create a marketing logo. According to the complaint, Beardwood purchased a nonexclusive, noncommercial license to use plaintiff's Paris Pro FS on March 25, 2015. Beardwood then allegedly manipulated certain aspects of the Paris Pro FS to create a marketing logo for Joy Mangano, a popular entrepreneur who sells products primarily on the Home Shopping Network. According to plaintiff, this violated both the copyright and ¶ 7 of the EULA. The Joy Logo is shown below:



Specifically, plaintiff claims that the logo Beardwood created for Joy Mangano bears remarkable similarity to what the original version of the Paris Pro FS would have produced absent any modification. A comparison and overlay between the two logos is shown below:



*Joy Logo*                          *Paris Pro FS*



*See* Complaint, ECF 1, at ¶¶ 49–50. According to the complaint, "[a]t the heart of this dispute is the specific unique artistic ligature created by Nadav in the *Paris Pro FS* and *Paris Pro Typeface font* between the letters 'j' and 'o,'" or the "JO Ligature." Complaint, ECF 1, at ¶ 28. Upon discovering this similarity, plaintiff filed this action for copyright infringement and breach of contract.

### Discussion

Defendant filed this motion to dismiss under Rule 12(b)(6) of the Federal Rules for failure to state a claim upon which relief can be granted. Defendant raises several grounds for dismissing the copyright claim: (1) that by entering into a licensing agreement, the EULA,

3

plaintiff waived any right to bring a copyright claim, and (2) that the complaint does not independently state a copyright claim because a typeface is not copyrightable or, alternatively, because any potential infringement is de minimis.[1] Defendant also claims that plaintiff has failed to state a claim for breach of contract under state law.

In ruling on a motion to dismiss, the court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001), *as amended* (Apr. 20, 2001). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### A. The License Agreement Bars Plaintiff's Copyright Claim

In 2015, Beardwood purchased a nonexclusive, noncommercial license to use the Paris Pro FS. In so doing, Beardwood signed a license agreement—the EULA. It is well settled that "[a] copyright owner who grants a nonexclusive license to use his copyrighted material waives his right to sue the licensee for copyright infringement." *Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998); *see also Jasper v. Sony Music Entm't, Inc.*, 378 F. Supp. 2d 334, 338 (S.D.N.Y. 2005) ("It is a hallmark principle of copyright law that licensors may not sue their licensees for copyright infringement."); *see also United States Naval Inst. v. Charter Communications, Inc.*, 936 F.2d 692, 695 (2d Cir. 1991) ("[A]n exclusive licensee of any of the rights comprised in the copyright, though it is capable of breaching the contractual obligations imposed on it by the license, cannot be liable for infringing the copyright rights conveyed to it.").

---

[1] Because I hold below that plaintiff's claim for copyright infringement is precluded by the license agreement, I need not address Beardwood's alternative grounds for dismissal.

4

However, the Second Circuit has recognized that "the fact that a party has licensed certain rights to its copyright to another party does not prohibit the licensor from bringing an infringement action where it believes the license is exceeded or the agreement breached." *Tasini v. New York Times Co.*, 206 F.3d 161, 170 (2d Cir. 2000). A claim for copyright infringement may be brought, despite the existence of a license agreement, when a licensee's infringing conduct exceeds the scope of a license, or when the licensee violates a condition precedent (contrasted with a covenant) of the license. *See Graham*, 144 F.3d at 235–38; *see also PaySys Int'l, Inc. v. Atos Se*, 226 F. Supp. 3d 206, 215 (S.D.N.Y. 2016) ("The Second Circuit has recognized that a licensor may recover against a licensee for copyright infringement where (1) the licensee's alleged infringement is outside the scope of the license; (2) the licensee failed to satisfy a condition precedent to the license, such that the license is invalid; or (3) the licensor rescinded the license after the licensee materially breached one of its covenants.").

None of these exceptions to the general rule—that the existence of a license extinguishes plaintiff's copyright claim—applies here. First, it is clear from the language of the EULA that the provision here is a covenant of the agreement, not a condition to its application. New York law governs the construction of the licensing agreement. *Graham*, 144 F.3d at 237; *see also Reis, Inc. v. Spring11 LLC*, 2016 WL 5390896, at *6 (S.D.N.Y. Sept. 26, 2016). A condition precedent is defined as "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Bank of New York Mellon Tr. Co. v. Morgan Stanley Mortg. Capital, Inc.*, 821 F.3d 297, 305 (2d Cir. 2016) (internal quotation marks omitted) (quoting *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995)); *see also PaySys Int'l*, 226 F. Supp. 3d at 226. In contrast, a covenant is defined as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promisee in understanding that a commitment has been

5

made." *Merritt Hill Vineyards Inc. v. Windy Heights Vineyard, Inc.*, 61 N.Y.2d 106, 112 (1984) (internal quotation marks omitted) (quoting Restatement (Second) of Contracts § 2, subd [1]). "Generally speaking, New York respects a presumption that terms of a contract are covenants rather than conditions." *Graham*, 144 F.3d at 237. In order to rebut the presumption, the Second Circuit has recognized that "[w]hile specific, talismanic words are not required, the law nevertheless demands that conditions precedent be 'expressed in unmistakable language.'" *Bank of New York Mellon Tr.*, 821 F.3d at 305 (quoting *Oppenheimer*, 86 N.Y.2d at 691). No such unmistakable language is found here. Section 7 of the EULA is titled "Further Limitations," and provides that anyone who purchases the Paris Pro FS is "NOT ALLOWED TO . . . [u]se the Font Software and/or any of its graphical representations and/or embodiments to design a logo (i.e., a logotype/graphical representing symbol) and/or a commercial product or part of a product and/or any artistic work . . . ." *See* Complaint, ECF 1, Exh. 3, ¶ 7. This is precisely what plaintiff alleges that Beardwood did in this case. Moreover, this is a far cry from language that New York courts have read as creating a condition precedent. *See, e.g., Oppenheimer*, 86 N.Y.2d at 691 (finding that the phrase "unless and until" created a condition precedent). As another district court recently found, Section 7 of the EULA applies only *after* someone purchases and downloads the Paris Pro FS, which "bar[s] any argument that it is a condition precedent." *PaySys Int'l*, 226 F. Supp. 3d at 226.

Alternatively, plaintiff contends that Beardwood's commercial exploitation of the Paris Pro FS was outside the scope of the noncommercial license between the parties. *See* Complaint, ECF 1, Exh. 3, ¶ 7 (prohibiting commercial use of the Paris Pro FS); *see also PaySys Int'l, Inc. v. Atos Se*, 226 F. Supp. 3d 206 (recognizing that a claim for copyright infringement could apply "if licensee's alleged infringement is outside the scope of the license"). But plaintiff's argument proves too much. Were plaintiff correct, *any* breach of a license agreement would place the licensor's conduct outside the scope of the agreement. This would undermine

6

the general rule set out in *Graham v. James*, which held that a by entering into a license, a copyright owner generally waives its right to sue under the copyright. 144 F.3d at 236.

Application of the outside-the-scope doctrine confirms its limited applicability. Take *Fioranelli v. CBS Broad. Inc.*, 232 F. Supp. 3d 531 (S.D.N.Y. 2017), for instance. In *Fioranelli*, the court recognized that "if a license is limited in scope and the licensee acts outside the scope, the licensor can bring an action for copyright infringement.'" *Id.* at 537 (internal quotation marks omitted) (quoting *BroadVision, Inc. v. Med. Protective Co.*, 2010 WL 5158129, at *3 (S.D.N.Y. Nov. 23, 2010)). But *Fioranelli* involved conduct that was not at all contemplated by the license agreement—namely, the authority of CBS to expansively sublicense footage of the World Trade Center site to programming beyond CBS-produced news segments. *Id.* at 537–38. In contrast, commercial use of the Paris Pro FS was specifically contemplated, and allegedly prohibited, by the EULA. Courts have also held that once a license has expired, continued use of a plaintiff's copyrighted materials falls outside the scope of the original license. *See Kamakazi Music Corp. v. Robbins Music Corp.*, 684 F.2d 228, 230 (2d Cir. 1982) ("Once the contract had expired, Robbins was liable for infringement of Kamakazi's copyrights."); *Palmer/Kane LLC v. Rosen Book Works LLC*, 204 F. Supp. 3d 565, 581 (S.D.N.Y. 2016) ("Because Rosen's September 2005 print run occurred after its license . . . had expired, such use . . . infringed plaintiff's copyright."). Nothing similar occurred here. Plaintiff has not alleged that the EULA expired or is otherwise invalid, but has instead brought a cause of action for breach of contract based on the EULA. This confirms that Beardwood's alleged conduct is governed by a covenant of the license agreement.

Because the alleged conduct at issue in this case is specifically covered by a covenant in the licensing agreement, plaintiff cannot maintain a copyright claim.

### B. Plaintiff's Breach of Contract Claim Is Dismissed

With the copyright claim dismissed, plaintiff is left with a claim for breach of contract under New York law. Jurisdiction in this case was based on a federal question, *see* 28 U.S.C. § 1331, and plaintiff's state law claim is before me as a matter of supplemental jurisdiction, *see* 28 U.S.C. § 1367. *See* Complaint, ECF 1, at ¶ 10. At this early stage in the litigation, having conducted no discovery or any preparation for a trial, I decline to exercise supplemental jurisdiction over plaintiff's breach of contract claim. *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well." (internal quotation marks omitted) (quoting *Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998))).

For the reasons stated herein, plaintiff's claim for copyright infringement is dismissed with prejudice, and the state claim for breach of contract is dismissed without prejudice to allow suit in the New York State Courts. The clerk shall enter judgement for the defendant, dismiss the complaint, terminate the motion (ECF 11), and tax costs as appropriate.

SO ORDERED.

Dated: January __, 2018
New York, New York

ALVIN K. HELLERSTEIN
United States District Judge